**UNITED STATES of America, Appellee,**

v.

**Bedros KALAYDJIAN, a/k/a "Peter", and Akram Mohammad Hayat, Defendants-Appellants.**

**Nos. 338, 625, Dockets 85–1226, 85–1228.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 13, 1985.

Decided Jan. 28, 1986.

George L. Santangelo, New York City (Santangelo, Santangelo & Cohen, New York City, on the brief), for appellant Kalaydjian.

Lynne F. Stewart, New York City, for appellant Hayat.

Catherine E. Palmer, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., and Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Before TIMBERS, KEARSE and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants Bedros Kalaydjian and Akram Hayat appeal from judgments of conviction entered June 25, 1985 after a jury trial in the Eastern District of New York, Herbert N. Maletz, Senior Judge, United States Court of International Trade, sitting by designation.

Kalaydjian was convicted of conspiracy to possess heroin with intent to distribute (Count I) and attempted possession of heroin with intent to distribute (Count III), in violation of 21 U.S.C. §§ 846, 841 (1982). He was sentenced to two concurrent three-year terms of imprisonment and to a special parole term of five years.

Hayat was convicted of conspiracy to possess heroin with intent to distribute (Count I), possession of heroin with intent to distribute (Count II) and attempted possession of heroin with intent to distribute (Count III), in violation of 21 U.S.C. §§ 846, 841 (1982). He was sentenced to three concurrent twelve-year terms of imprisonment and to two concurrent special parole terms of ten years each.

We find that the principal claim of error raised on appeal is appellants' joint claim that the district court erred in refusing to permit defense counsel to cross-examine government witnesses regarding the witness's reasons for deciding to affirm rather than to swear on the Koran. Defense counsel sought to cross-examine, on this matter purportedly to cast doubt on the witnesses' credibility. Other subordinate claims of error are raised. We affirm.

I.

We shall summarize only those facts believed necessary to an understanding of our rulings on the legal issues raised on appeal.

The events leading to the indictment, trial, and conviction of appellants began in June 1984 when Haji Karim, a Pakistani nationalist, was arrested in New York following his receipt of ten kilograms of heroin. On June 23, 1984, he agreed to cooperate with the government in an undercover investigation. He later pled guilty to possession of heroin with intent to distribute. On July 10, 1984 Karim, acting in cooperation with the government, called Hayat and told him that he would be arriving in New York the next day with ten kilograms of heroin. Hayat agreed to meet Karim the next day at the Holiday Inn.

On July 11, Hayat, accompanied by Sultan Ahmad,[1] arrived at the Holiday Inn and went to Karim's room. Karim gave Hayat a sample of heroin to test. Hayat took the

---

1. Sultan Ahmad also is a Pakistani national who was arrested in connection with the instant con- spiracy involving both appellants.

heroin and told Karim that if he found it satisfactory he would arrange for a buyer.

After sampling some of the heroin and finding it satisfactory, Hayat gave the remainder to Ahmad with instructions to deliver it to his "boss", Kalaydjian,[2] and to ascertain whether Kalaydjian would be interested in purchasing more. Ahmad delivered the heroin to Kalaydjian, who informed Ahmad that he wanted to purchase 125 grams of the same quality every two weeks. Ahmad conveyed this information to Hayat, who in turn conveyed it to Karim.

The next day, July 12, Hayat told Ahmad that he had spoken with Karim, and that the price was $75,000 per kilogram, "money up front". Ahmad related this information to Kalaydjian, who agreed to meet the price. The sale was scheduled for July 18.

On July 18, Karim, who was riding in a taxicab driven by an undercover agent, met Hayat and followed him to Ahmad's residence. Ahmad met the men outside his home. In accordance with Hayat's instructions, Ahmad rode in the cab with Karim. Ahmad told the cab driver to go to Nobody's Good Time Emporium, a restaurant where Kalaydjian was waiting. Ahmad and Karim arrived at the restaurant before Hayat. Ahmad went inside to arrange the deal while Karim waited outside in the cab. Kalaydjian refused to purchase the heroin at that time, apparently because he had not been given enough time to arrange for the money and because he was suspicious of Karim's use of the cab. When Hayat arrived, Kalaydjian told him of his suspicions. As a consequence Hayat told Karim to leave and to call him later to arrange a sale at another time. Ahmad, Hayat and Kalaydjian remained together in the restaurant until around 4:00 PM that afternoon. At that time Hayat left and was arrested. Ahmad was arrested later that evening. Kalaydjian was arrested several days later.

At trial, Karim and Ahmad testified for the government against both appellants. Prior to their testimony, however, counsel for both appellants jointly requested that Ahmad and Karim be sworn on the Koran rather than the bible. Defense counsel argued that, since both witnesses were Muslims, swearing on the Koran might guarantee truthful answers. Although the government did not object to this request, it did point out that every witness has the right to affirm rather than to swear on the bible, pursuant to Fed.R.Evid. 603.

Thereafter, Ahmad's counsel informed the court that Ahmad wished to affirm rather than to swear. Defense counsel did not object to Ahmad's election to affirm. Nor did defense counsel request the district court to hold a voir dire outside the presence of the jury to determine if Ahmad was impressed with his duty to testify truthfully. *See United States v. Rabb,* 394 F.2d 230, 233 (3 Cir.1968). Having failed to object to Ahmad's affirmation at trial and having failed to afford the district court the opportunity to determine if Ahmad understood his duty to tell the truth, appellant is foreclosed on appeal from claiming that Ahmad's affirmation was a sham. Defense counsel did, however, request permission to cross-examine Ahmad regarding his reasons for refusing to swear, in order to cast doubt on his credibility as a witness. After hearing argument from defense counsel, Ahmad's counsel and the government, the district court ruled that the requested cross-examination was precluded by Fed.R.Evid. 610.

Prior to Karim's testimony, the court asked Karim whether he wished to swear or affirm. Although Karim elected to swear, his oath was more in the form of an affirmation. The court did not require his oath to be taken on the Koran. Pursuant to Fed.R.Evid. 610, the court denied the request of Hayat's counsel to cross-examine Karim regarding his reasons for not swearing on the Koran.

On April 4, 1985 the jury convicted appellants of the charges set forth above. In June 1985 they were sentenced. From their judgments of conviction, these appeals have been taken.

---

**2.** Ahmad worked at Kalaydjian's Mobil sta-  tion.

## II.

With these facts in mind, we turn to the principal claim of error raised, namely, the correctness of the district court's ruling which precluded defense counsel from cross-examining government witnesses concerning their decision to affirm rather than to swear on the Koran.[3]

Fed.R.Evid. 610 "forecloses inquiry into the religious beliefs or opinions of a witness for the purpose of showing that his character for truthfulness is affected by their nature." Fed.R.Evid. 610 (Advisory Committee Note). Appellants argue that Rule 610 does not prohibit the requested cross-examination because Rule 610 excludes evidence of religious beliefs only, not of conduct resulting from religious beliefs. In essence, appellants contend that, although Rule 610 forecloses a party from undermining a witness's credibility based on the witness's religious beliefs, it does not foreclose a party from challenging a witness's credibility based on the witness's refusal to perform a religious act, i.e., the witness's refusal to swear on his religion's bible or its counterpart.

We reject appellants' attempt to distinguish between cross-examining a witness regarding his religious beliefs, and cross-examining him regarding conduct that is significant only because of the witness's religious beliefs. Appellants cite no authority to support their novel claim that evidence of conduct resulting from religious beliefs is admissible under Rule 610. Moreover, an analysis of appellants' reasoning demonstrates that their position is untenable.

Appellants desired to cross-examine Ahmad regarding his reasons for refusing to swear on the Koran in order to raise the following inference: if a man is religious, he will be willing to swear on his religion's bible; but if he refuses to swear, his testimony will be untrustworthy. Appellants could not have established that inference successfully unless the district court had allowed them to inquire into the sincerity and genuineness of Ahmad's Muslim beliefs. Indeed, unless appellants were permitted to prove to the jury that Ahmad was a devout Muslim who believed deeply in the Koran, Ahmad's act of refusing to swear on the Koran would have been meaningless to the jury.

The district court correctly held that Rule 610 squarely prohibited any inquiry into the firmness of Ahmad's religious beliefs. The court's ruling was correct because of the possible prejudicial effect that disclosure of such information might have had on the jury. Indeed, in defining the purpose of Rule 610, the District of Columbia Circuit has stated that "[t]he purpose of the rule is to guard against the prejudice which may result from disclosure of a witness's faith." *United States v. Sampol*, 636 F.2d 621, 666 (D.C.Cir.1980); *see Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 84 (2 Cir.1982) (inquiry into genuineness of witness's church affiliation properly excluded by trial court because of potential prejudicial effect). Moreover, extensive questioning on the collateral issue of Ahmad's religious beliefs might have confused the jury and distracted its attention from the principal task of determining whether appellants had conspired to deal in heroin.

Since Ahmad's act of refusing to swear on the Koran is significant only when considered against the backdrop of

---

3. Hayat also claims that the district court erred in permitting Karim to testify to a meeting he had with Hayat in December 1983 which was unrelated to the instant conspiracy. At this meeting, Hayat discussed a plan to purchase heroin. Hayat argues that evidence of the meeting should have been excluded as prior bad act evidence under Fed.R.Evid. 404(b). This argument is without merit. We have held that a trial court has the discretion to admit prior act evidence in order to establish the background of the conspiracy, or to show the basis of the trust relationship between the informant and the defendant. *E.g., United States v. Harris,* 733 F.2d 994, 1006 (2 Cir.1984). Since in the instant case evidence of Karim's prior meeting with Hayat was offered by the government to establish the basis of the trust relationship between Karim and Hayat, the evidence was properly admitted. Moreover, after admitting the evidence the district court immediately gave an appropriate limiting instruction to the jury.

his Muslim faith, we hold that the district court properly denied the requested cross-examination pursuant to Rule 610. We see no difference between challenging a witness's credibility by cross-examining him regarding his religious beliefs, and challenging the witness's credibility by cross-examining him regarding an act that is meaningful only when considered in relation to the firmness of the witness's religious beliefs. Both forms of cross-examination require inquiry into the nature of the witness's religious beliefs. As such they are prohibited by Rule 610. Finally, we note that a witness's right to affirm, rather than to swear, as provided by Fed.R. Evid. 603, would be meaningless if a witness, after exercising his right to affirm, could be cross-examined regarding the reasons underlying that decision.

We have carefully considered all claims of error raised by appellants and find all are without merit.

Affirmed.