835 F.2d 875
 24 Fed. R. Evid. Serv. 402
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Herbert HILL, a/k/a Bill, Defendant-Appellant.
 No. 86-5671.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 6, 1987.
Decided Dec. 7, 1987.
 
 Joel Hirschhorn for appellant.
 Thomas Ernest Booth, Department of Justice (Samuel T. Currin, United States Attorney; Thomas Swaim, Assistant United States Attorney, on brief), for appellee.
 Before SPROUSE and ERVIN, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant, William Herbert Hill, challenges his convictions of conspiracy to import and distribute marijuana in violation of 21 U.S.C. Secs. 841(a)(1),[1] and conspiring to obstruct justice in violation of 18 U.S.C. Sec. 371 and Sec. 1503. Because we find no error in the proceedings below, we affirm his convictions.
 
 I.
 
 2
 At trial the government sought to prove that Hill had sold boats to known drug traffickers. The boats had been specially equipped with hiding places for storing illegal drugs. Testimony at trial revealed that several boats with hidden compartments were purchased by one Dennis Cable, the head of a marijuana smuggling ring. Hill steadfastly denied any knowledge that Cable was involved in drug smuggling.
 
 
 3
 During the period in which the boat sales were made, a grand jury in the Eastern District of North Carolina was investigating Cable for tax evasion. Jesse Rhinehart, an Internal Revenue Service Special Agent, was assigned to aid the grand jury in its investigation. Rhinehart met with Cable to examine his financial records. After this meeting, Cable told Hill to make the boat sales figures comply with what Cable had told agent Rhinehart. In his interview with agent Rhinehart, Hill said that Cable had purchased two boats for amounts less than Cable actually paid. Rhinehart gave the grand jury Hill's account of the boat purchases. This misinformation impeded the work of the grand jury.
 
 
 4
 In prosecuting Hill, the government relied predominantly on the testimony of former co-conspirators and witnesses who had entered plea agreements.[2] The seven witnesses who had entered such agreements were Dennis Cable, Steven Smith, Floyd Thomas, Howard Stricklin, James Fidel, Barton Harrison, Jr., and Thomas Ingram. During the direct examination of these witnesses, the district court allowed the text of the witnesses' plea agreements into evidence. The agreements contained provisions that each witness would testify fully and truthfully in any proceedings, and would submit to polygraph examination whenever requested.
 
 
 5
 The presentation of evidence and arguments in Hill's trial concluded on October 3, 1986. On October 5, 1986, the jury found Hill guilty of conspiring to import and/or distribute marijuana, and conspiring to obstruct justice. Hill was sentenced to eight years in prison and fined $10,000.00 for the drug convictions, and he was sentenced to a concurrent term of five years for the obstruction of justice conviction. This appeal followed.
 
 II.
 
 6
 On appeal, Hill maintains that errors committed by the trial court were of such magnitude as to require reversal of his convictions. In particular, Hill argues that the admission of the text of the plea agreements was unduly prejudicial in that it improperly bolstered the testimony of the government's witnesses. Appellant also argues that the trial court erred in admitting into evidence testimony of his prior bad acts. The trial court's failure to ask jurors about their attitudes concerning reasonable doubt, burdens of proof, and the defendant's right to remain silent is also assigned as error. Finally, Hill urges this court to find that the obstruction of justice conviction cannot stand because he did not give information directly to the grand jury, but gave the information to a mere agent of that body. As a result, he argues that the requirements of 18 U.S.C. Sec. 1503 are unsatisfied. Although the references to the polygraph test were improper, we believe the error to be harmless in this instance. We also conclude that appellant's remaining contentions are unpersuasive.
 
 
 7
 The text of the plea agreements referred to the witnesses' willingness to testify fully and truthfully. The appellant argues that such language unfairly bolsters the credibility of the government's witnesses. This court in United States v. Henderson, 717 F.2d 135 (4th Cir.1983), cert. denied, 104 S.Ct. 1006 (1984), ruled that such language in a plea agreement is admissible to show the extent of a witness' relationship with the government and does not impermissibly bolster that witness' testimony. Accord, United States v. Machi, 811 F.2d 992, 2003-1004, (7th Cir.1987); United States v. Williford, 764 F.2d 1493, 1502 (11th Cir.1985); United States v. Binker, 795 F.2d 1218, 1222-1223 (5th Cir.1986). This evidence was properly admitted.
 
 
 8
 Hill's contention that the trial court erred in admitting evidence of the plea agreements' polygraph provisions is to be reviewed for plain error. At trial the appellant maintained that he was entitled to cross-examine the witnesses about the provisions. He argues for the first time on appeal that the provisions are inadmissible. Because he has changed the basis for his objection, it will be reviewed only for plain error. United States v. Johnson, 802 F.2d 1459, 2465 (D.C.Cir.2986); United States v. Taylor, 800 F.2d 1012, 1017 (10th Cir.1986).
 
 
 9
 In United States v. Porter, 821 F.2d 968 (4th Cir.1987) we agreed with a view expressed by the Eleventh Circuit in United States v. Hilton, 772 F.2d 783, 786 (11th Cir.1985) that admission of plea agreements containing provisions relating to polygraph testing constitutes improper bolstering of a witness' testimony. The impropriety of the reference to the polygraph provision, however, is subject to a harmless error analysis. United States v. Herrera, No. 86-5662 (4th Cir. November 2, 1987). Porter, 821 F.2d at 974. While this case differs from Porter in that here government's case was constructed primarily from the testimony of co-conspirators who pleaded guilty, we remain persuaded that Hill has suffered no undue prejudice from the introduction of the plea agreements at his trial.
 
 
 10
 In deciding this issue, we must determine whether the jury's independent assessment of the testimony was impaired by the introduction of the polygraph provisions. Herrera, supra. The test for such a determination was set forth in United States v. Tedder, 801 F.2d 1437 (4th Cir.1986), where we ruled that a mistrial is not automatically required where a government witness testified that he had taken a polygraph test. A mistrial is conditioned on two factors: "(1) where an inference about the result of the test may be critical in assessing the witness' credibility, and (2) whether the witness' credibility is vital to the case." Tedder, 801 F.2d at 1444, quoting United States v. Brevard, 739 F.2d 180, 182 (4th Cir.1984).
 
 
 11
 An application of the Brevard-Tedder test reveals that the error below was harmless, and a fortiori does not constitute a "miscarriage of justice" justifying reversal under the plain error doctrine. United States v. Young, 470 U.S. 1, 15, 84 L.Ed.2d 1, 13, 105 S.Ct. 1038 (1985) and United States v. Polowichak, 783 F.2d 410, 415-416 (4th Cir.1986). It is true that the witnesses' testimony was vital; however, there is no reason to believe that the reference to the polygraph provision affected the jury's determination of witness credibility. First, the possibility of a polygraph test was mentioned only once in each plea agreement in a brief and unremarkable fashion. Furthermore, the government did not rely on the polygraph provision in its argument. As a result no undue emphasis was placed on the language from the plea agreements. Second, no witness testified as to the results of any polygraph examination.[3] Third, each of the seven witnesses was thoroughly cross-examined as to his plea agreement, according the jury ample opportunity to evaluate the witness' credibility. The fact that several witnesses recounted similar and consistent stories involving the defendant significantly decreases the likelihood that the jury improperly relied on the polygraph provision to unduly bolster the credibility of the government's witnesses. Herrera, supra. And, finally, the trial court offered a cautionary instruction to the jury to scrutinize the testimony of the co-conspirators carefully.[4]
 
 
 12
 The provisions referring to the possibility of a polygraph test should have been redacted from the plea agreements to conform with our decision in Porter. In this case, however, we believe that the failure to remove such language was not so prejudicial as to deny Hill a fair trial.
 
 III.
 
 13
 Hill argues next that the trial court erred in admitting evidence of Hill's acts of prior misconduct. The court admitted evidence that Hill had told Howard Stricklin, one of Cable's associates, of a method to defraud insurance companies by buying and insuring the title of a boat while falsely representing that the boat itself had been purchased and then collecting the insurance proceeds after reporting the boat stolen. The court also admitted evidence of the seizure of two boats containing substantial amounts of marijuana in hidden compartments. One vessel, the "Roth" boat, was sold by Hill to Robert Roth. Hill was also involved in the purchase of the second vessel, a speedboat, which was found abandoned with seventeen bales of marijuana on board.
 
 
 14
 Federal Rule of Evidence 404(b) provides that although evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith ... [i]t may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[5] See e.g., United States v. Percy, 765 F.2d 1199, 1203 (4th Cir.1985). In order for evidence to be admissible under Rule 404(b), "it must first be relevant to a genuine issue other than criminal disposition ... [and] the court must determine whether the danger of undue prejudice substantially outweighs the probative value of the evidence." United States v. Tedder, 801 F.2d at 1444. Applying this test to the evidence admitted by the trial court reveals no reversible error.
 
 
 15
 Evidence that Hill suggested an insurance fraud scheme to Stricklin was admissible to show Hill's intent and to rebut his claim of innocence. Because Hill would not have discussed such a plan with an innocent party, the evidence demonstrated that appellant knew that Cable and his colleagues were not legitimate boat purchasers. United States v. Kalaydjan, 784 F.2d 53, 56 n. 3 (2d Cir.1986); United States v. McKoy, 771 F.2d 1207, 1213-1215 (9th Cir.1985) and United States v. Kendall, 766 F.2d 1426, 1438-1439 (10th Cir.1985). This fact tends to show that Hill intended to assist Cable and company by selling them specially designed boats.
 
 
 16
 When Hill argued that he was a legitimate boat salesman, who knew nothing of Cable's drug activities, he forfeited his protection against "other crimes" evidence. Thus the insurance fraud scheme was also properly admitted to rebut his claim of innocence. United States v. Billups, 692 F.2d 320, 329 (4th Cir.1982). Furthermore, this evidence was not unduly prejudicial. After the evidence was presented, the judge gave the jury a cautionary instruction that they should consider the evidence only to decide Hill's state of mind and the absence of mistake or accident. Such an instruction will suffice to dispel any prejudice under the facts of this case. Tedder, 801 F.2d at 1444.
 
 
 17
 Hill's claim that the trial court erred in admitting evidence of the seizure of the two drug smuggling boats, is reviewed only for plain error because appellant did not object to the admission of the evidence at trial. Polowichak, 783 F.2d at 416. The boats were seized with substantial quantities of drugs stored in hidden compartments. Hill defended himself by saying that he never altered any boats, nor did he know of the drug activities of his business patrons. The testimony concerning these two boats, like the testimony concerning the insurance fraud scheme, was properly admitted to rebut Hill's defense of innocent knowledge. In light of the trial court's carefully drawn instruction, we can see no abuse of discretion in the court's decision to admit this evidence of "other crimes" under Rule 404(b).
 
 IV.
 
 18
 The appellant's remaining contentions do not merit extensive commentary. Hill claims that the trial court erred in refusing to ask his proposed voir dire questions concerning reasonable doubt, burdens of proof, and the defendant's right to remain silent. Here again, the appellant's objections are reviewed only for plain error because he did not specifically object to the court's voir dire. Polowichak, supra. Under any standard, however, the trial court did not err. This court has repeatedly held that a district court need not question venirepersons about their views on reasonable doubt and the burden of proof, particularly when the court correctly instructs the jury on these issues. United States v. Robinson, 804 F.2d 280, 281 (4th Cir.1966); United States v. Carter, 772 F.2d 66, 67 (4th Cir.1985).
 
 
 19
 Finally, we reject appellant's contention that the count alleging a conspiracy to obstruct justice in violation of 18 U.S.C. 371 and 1503 did not state an offense.[6] Specifically, Hill argues that section 1503 does not reach crimes against agents of the grand jury because such agents are not authorized by any statute or rule.[7] In its most crystallized form, Hill argues that he did not provide false information to a grand jury, he only provided false information to an IRS Special Agent.
 
 
 20
 An effort to furnish a grand jury with false information is a crime within the meaning of the omnibus clause of section 1503. United States v. Altomare, 625 F.2d 5 (4th Cir.1980). See United States v. Lench, 806 F.2d 1443, 1445 (9th Cir.1986). Because we believe that a grand jury can enlist agents to assist its investigation, the obstruction of its agents' efforts is properly charged as a violation of section 1503.
 
 
 21
 Many courts of appeals have upheld the grand jury's practice of having federal investigators act as "agents" of the grand jury to assist it in obtaining evidence and ensuring compliance with subpoenae.[8] See United States v. Jones, 766 F.2d 994, 998-1001 (6th Cir.), cert. denied, 106 S.Ct. 526 (1985) (the court accepted the swearing in of an agent of the grand jury to aid in the investigation); In re Grand Jury Proceedings, Mills, 686 F.2d 135, 136, 140 n. 4 (3rd Cir., cert. denied, 459 U.S. 1020 (1982) (the grand jury's agent was to take a hair exemplar); United States v. Cosby, 601 F.2d 754, 757-758 n. 6 (5th Cir.1979) (assumed without deciding that the practice was proper); United States v. Stanford, 589 F.2d 285, 290, 292 (7th Cir.1978), cert. denied, 440 U.S. 983 (1979) (grand jury agents included the FBI, Postal Inspection Service, and the Illinois Bureau of Investigation). See also United States v. Mara, 410 U.S. 19, 20 (1979) (grand jury target was directed to produce evidence to the grand jury's designated agent).
 
 
 22
 In United States v. Shoup, 608 F.2d 950 (3rd Cir.1979), the Third Circuit ruled that where a United States Attorney's office and the grand jury had conducted a joint investigation, the obstruction of the United States Attorney's inquiry was "equivalent to an impairment of the federal grand jury's determination." 608 F.2d at 960. The analysis followed in Shoup is fully applicable here. Here, as in Shoup, substantial evidence exists that Hill endeavored to obstruct justice and conspired to obstruct justice under sections 371 and 1503. Hill agreed with Cable to provide false sales information about Cable's boats to federal authorities; he actually provided that information to Rhinehart, who was operating as an agent of the grand jury. Hill acted during a pending judicial investigation and affected the progress of the grand jury's investigation. Accordingly, we hold that the evidence supports the jury's conclusion that Hill conspired with Cable for the purpose of impeding the grand jury's investigation, and that Hill endeavored to obstruct justice within the meaning of section 1503.
 
 
 23
 We have reviewed carefully Hill's other exceptions and find them without merit. The convictions below are
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 18 U.S.C. section 841(a)(1) provides:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance.
 18 U.S.C. sections 952 and 960(a)(1) make the importation of controlled substances unlawful.
 
 
 [2]
 The government's motion to correct its brief is granted. The inadvertently omitted footnote has been given full consideration
 
 
 [3]
 In Tedder, supra at 1444-1445, this court affirmed the defendant's conviction despite a witness' testimony that he had taken (and by implication, passed) a polygraph test
 
 
 [4]
 Such an instruction was held to be curative of any error in Tedder, 801 F.2d at 1445
 
 
 [5]
 Fed.R.Evid. 404(b) reads in full:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [6]
 18 U.S.C. section 1503 reads in full:
 Sec. 1503. Influencing or injuring officer or juror generally.
 Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 [7]
 Hill relies primarily on United States v. Kilpatrick, 594 F.Supp. 1324, 1328 (D.Colo.1984) to support his contention that referring to IRS agents as "agents of the grand jury" is a prosecutorial device which prejudices grand jurors' determinations. On appeal, the Tenth Circuit, in United States v. Kilpatrick, 821 F.2d 1456, 1472 (10th Cir.1987), reversed the trial court saying that no evidence existed to show that the "agents of the grand jury" label used by prosecutors in describing the IRS agents prejudiced the defendant
 
 
 [8]
 This court, in an unpublished per curiam opinion, United States v. Jacobs, No. 84-5358, slip op. (4th Cir. Feb. 6, 1986) has ruled that a prosecutor's referring to IRS agents as "agents of the grand jury" when he was presenting his case to the grand jury, does not constitute prosecutorial misconduct and any subsequent indictment need not be dismissed