No. 82,756

STATE OF KANSAS, *Appellee*, v. ISAAC D. SAIZ, *Appellant*.

(7 P.3d 1214)

Opinion filed July 14, 2000.

*Michael C. Brown,* of Michael C. Brown, P.A., of Mulvane, argued the cause and was on the brief for appellant.

*Elizabeth L. Reimer,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Isaac D. Saiz, from his convictions for first-degree murder, two counts of attempted murder, and discharge of a firearm at an occupied building.

Highly summarized, Saiz claims he was entitled to an instruction on aggravated assault and challenges the sufficiency of the evidence on his crimes and sentences.

On July 21, 1998, Saiz, Jesse Lozano, Thomas Estrada, and Daniel Medrano were riding in Medrano's car and drinking. Saiz, Lozano, Estrada, and Medrano were all members of a Hispanic gang called the Vato Loco Boys. The Vato Loco Boys' territory was the north central side of Wichita. Saiz threw a bottle out of the window, but it did not break. Medrano backed up the car to get the bottle and in the process backed into a parked car.

Medrano and Saiz got out of the car, walked to Oscar Torres' house, and told him that the Suriano 13's, a rival Hispanic gang, had rammed Medrano's car. The Surianos' territory is south Wichita in an area known as Planeview. Medrano and Saiz wanted Torres to help them retaliate against the Surianos.

Later in the evening, Saiz, Medrano, Estrada, and Lozano were at Everett McGinnis' home where Medrano told McGinnis and several others that Medrano's car had been damaged by the Surianos. Saiz, Estrada, and Lozano backed up Medrano's lie. The group talked about retaliation and decided to drive to Planeview and shoot some Surianos. Saiz, Medrano, Lozano, McGinnis, Rodrigo Chavez, Alitta Castro, Estrada, and Torres got in Torres' father's Lincoln and drove to Planeview. Torres drove and Saiz sat in the front passenger seat. The group took two weapons, a .22 caliber rifle and a .20 gauge shotgun.

Saiz retrieved the shotgun out of the trunk when they arrived in Planeview. The group saw two teenagers sitting on the back of a red car in front of a residence on Dunham street.

Fourteen-year-old Manuel Galvan III and his friend Ricky Delorea were "hanging out" near Galvan's mother's red car in front of his house when the Lincoln approached about 10:30 that night. Galvan was sitting on the trunk and Delorea was standing nearby. Galvan's father, mother, and 13-year-old brother were inside the house. Galvan's 8-year-old brother Antonio was outside near the porch playing with his German shepherd puppy. Galvan and Delorea noticed the Lincoln driving slowly down the street with its lights off and saw the passenger window rolled down and a shotgun protruding from the car. Someone in the Lincoln yelled, "Pudo Loco Boys," which means "nothing but Vato Loco Boys." Saiz successfully fired the shotgun three times. Two unspent shotgun shells were ejected from the shotgun at some point, as Saiz did not know how the automatic shotguns worked. Galvan yelled "duck" before any of the shots were fired and crouched down behind his mother's car. Delorea got underneath the car and was not hit. One shot hit the windshield of the car and another shot hit the roof of the car, deflected off, and hit the house. The third shot was a direct shot that hit Antonio. Antonio was hit by 22 pellets of shot, 8 passing through his scalp and 14 penetrating his skull and brain, causing his death.

Medrano tried to shoot the .22 rifle but it never fired. After shooting Antonio, Saiz told the others in the car that he "got them." Bragging, he said, "Man, I got them. I got them." Saiz and Medrano wanted to go back to the house to shoot some more because Medrano's rifle had not fired during the drive-by shooting.

Wichita Police Officer Patrick Phipps was patrolling in the Planeview area that evening. He received a call about the shooting and stopped the Lincoln. Officers found the .20 gauge shotgun in the back seat on the floorboard of the Lincoln.

Saiz was charged with first-degree murder, felony first-degree murder, one count of criminal discharge of a firearm at an occupied building, and two counts of attempted first-degree murder. The inherently dangerous felonies used to support the felony murder charge were attempted first-degree murder and/or criminal discharge of a firearm. He was 16 years old at the time of the crimes but tried as an adult. At trial, Saiz asked the court to give an in-

struction on aggravated assault as a lesser included offense of the two attempted murder charges, which the trial court refused. The jury found Saiz guilty of first-degree murder on both theories of premeditation and felony murder. The jury also found Saiz guilty of two counts of attempted murder and one count of criminal discharge of a firearm at an occupied building. Pursuant to K.S.A. 21-4635, the court found that aggravating circumstances existed (Saiz knowingly and purposely created a risk of death to more than one person), which outweighed the mitigating factor of Saiz' age at the time he committed the crimes. Saiz was sentenced to a term of life imprisonment/hard 40 for first-degree murder. Saiz was sentenced to 49 months for criminal discharge of a firearm at an occupied building and to 194 months for each of the two attempted first-degree murder convictions. The sentences run consecutively.

Saiz moved for a mistrial, based upon the trial court's refusal to give an instruction on aggravated assault as a lesser included offense of the two attempted first-degree murder charges. The trial court denied the motion.

Saiz raises five issues on appeal: (1) whether the trial court erred in refusing to give an instruction on aggravated assault as a lesser included offense of attempted first-degree murder; (2) whether there was sufficient evidence to support his convictions for attempted first-degree murder; (3) whether there was sufficient evidence to support his conviction for first-degree murder; (4) whether there was sufficient evidence to support the court's finding of an aggravating circumstance when considering whether to impose a hard 40 sentence; and (5) whether the trial court's finding of one aggravating circumstance outweighed a mitigating circumstance in sentencing him to a hard 40 sentence. We affirm.

## I. LESSER INCLUDED OFFENSE

Saiz argues that the trial court erred in refusing to give an instruction on aggravated assault as a lesser included offense of attempted first-degree murder.

Recently, the Court of Appeals discussed lesser included offenses and specifically addressed important legislative changes, stating:

"Prior to July 1, 1998, the appellate courts of this state have held that a trial court has an affirmative duty to instruct a jury on *any* lesser included offense supported by the evidence. *State v. Butler*, 25 Kan. App. 2d 35, 38, 956 P.2d 733, *rev. denied* 265 Kan. 886 (1998). This rule applied even though no such instruction was requested. It applied even though no one had ever argued or even suggested that a particular offense might be a lesser included offense of that with which defendant was charged. The fact that no one had suggested it before or that no one had requested such an instruction did not prevent us from reversing the trial court for failing to give a lesser included offense instruction that was raised as an afterthought. The net result is that we have been forced time and time again to consider lesser included offense claims that were never brought to the attention of the trial court. See *State v. Hickles*, 261 Kan. 74, 83, 929 P.2d 141 (1996).

"The legislature has taken a significant step to eliminate the problems discussed above. K.S.A. 1999 Supp. 22-3414(3) became effective July 1, 1998. L. 1998, ch 185, § 3. That statute provides in pertinent part as follows:

'No party may assign as error the giving or failure to give an instruction, *including a lesser included crime instruction*, unless the party *objects thereto* before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is *clearly erroneous*.' " *State v. Brooker*, 27 Kan. App. 2d 396, 398, 4 P.3d 1180 (2000).

The crimes in this case occurred on July 21, 1998. Therefore, in order for Saiz to preserve this issue for appeal, he must have asserted at the trial level that an instruction for aggravated assault was warranted. Saiz sought an instruction for aggravated assault as a lesser included offense of attempted murder; thus, the issue was properly preserved for appeal.

The question is not, however, whether an instruction on aggravated assault was warranted, but whether aggravated assault is a lesser included crime of attempted murder. If it is not, then the trial court did not err in refusing to give such an instruction. The question of whether a crime is a lesser included offense is a question of law over which we have unlimited review. *State v. Belcher*, 269 Kan. 2, 4, 4 P.3d 1137 (2000); see *State v. Mendenhall*, 18 Kan. App. 2d 380, 381, 855 P.2d 975 (1993).

This court recently addressed the issue of lesser included offenses in *Belcher*. We stated:

"We apply [*State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988),] to decide whether a particular crime is a lesser included offense of another crime. The *Fike* court admitted that language in K.S.A. 21-3107(2)(d), 'a crime necessarily proved if the

crime charged were proved,' in terms of interpretation and application was 'most troublesome.' 243 Kan. at 367. See Comment, *Simplifying the Issue?: State v. Fike and the Doctrine of Lesser Included Offenses In Kansas*, 45 Kan. L. Rev. 1463 (1997). The implementation of 21-3107(2)(d) and the application of *Fike* have judicially bedeviled trial and appellate courts for more than a decade.

"*Fike* establishes a two-prong test in determining whether a particular crime is a lesser included offense. The first prong asks whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. The second prong instructs that, even if the elements of the lesser crime are not included in the elements of the crime charged, the lesser crime might still be a lesser included crime if the factual allegations of the charging document and evidence at trial necessary to prove the crime charged would also necessarily prove the lesser crime. 243 Kan. 365, Syl. ¶ 1.

"The troublesome second prong of *Fike*, the prong at issue here, was eliminated by the legislature in 1998. See K.S.A. 1999 Supp. 21-3107(2); Molzen, *Lesser Included Offenses: An End to the Second Prong of the* Fike *Test*, 67 J.K.B.A. 30 (Nov. 1998)." 269 Kan. at 5.

The prior version of K.S.A. 21-3107 read in pertinent part:

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a) A lesser degree of the same crime;

(b) an attempt to commit the crime charged;

(c) an attempt to commit a lesser degree of the crime charged; or

(d) *a crime necessarily proved if the crime charged were proved*." (Emphasis added.)

The present version of K.S.A. 1999 Supp. 21-3107 does not contain a "crime necessarily proved" element and reads in pertinent part:

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

(a) A lesser degree of the same crime;

(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged; [the 'statutory elements' prong of *Fike*]

(c) an attempt to commit the crime charged; or

(d) an attempt to commit a crime defined under subsection (2)(a) or (2) (b)."

K.S.A. 21-3107 was amended on July 1, 1998. Since the crimes committed in this case occurred on July 21, 1998, the second prong of *Fike* can be disregarded, unlike the situation in *Belcher* which

necessarily involved revisiting *Fike*'s "crime necessarily proved" prong. Such analysis is not applicable here.

Prior to the decision in *Fike*, this court decided *State v. Daniels*, 223 Kan. 266, 573 P.2d 607 (1977). In *Daniels*, the defendant was charged with attempted murder and simple battery. Concluding that they were lesser included crimes of attempted murder, the trial court gave instructions to the jury on aggravated battery, aggravated assault, and criminal injury to persons. The defendant was found not guilty of attempted murder; however, the jury found the defendant guilty of aggravated battery.

On appeal, the defendant argued that it was improper for the trial court to give an instruction on aggravated battery, as aggravated battery is not a lesser included offense of attempted murder. Justice Holmes, writing for the court, noted that determining whether a crime is a lesser included offense is a "problem" that the courts have continuously wrestled with. 223 Kan. at 269. Quoting *Wisner v. State*, 216 Kan. 523, 532 P.2d 1051 (1975), the court applied the "statutory elements" test which is the first prong of *Fike*. The test used in *Daniels* to determine whether a crime is a lesser included crime is whether all the elements necessary to prove the lesser offense are present to establish the elements of the greater offense. The *Daniels* court reversed the decision of the trial court and held that the crime of aggravated battery is not a lesser included crime of attempted murder because an element of aggravated battery, unlawful touching, or application of force to the person of another, is not a necessary element of attempted murder. 223 Kan. at 270.

Likewise, aggravated assault is not a lesser included crime of attempted murder. Aggravated assault requires proof that the victim experienced reasonable apprehension of immediate bodily harm, while attempted murder does not. K.S.A. 21-3408; K.S.A. 21-3410. Because the legislature has amended K.S.A. 21-3107(2), such that analysis of the second *Fike* prong is no longer necessary for crimes committed after July 1, 1998, our analysis today follows the same approach taken in *Daniels*. See also *State v. Rodriquez-Garcia*, 23 Kan. App. 2d 847, 856, 937 P.2d 446 (1997) (holding that under the first prong of *Fike*, aggravated assault is not a lesser

included offense of attempted second-degree murder and that the trial court did not err in refusing to give such an instruction); and *State v. Daniels*, 12 Kan. App. 2d 479, 483, 753 P.2d 300 (1987) (pre-*Fike* decision utilizing an analysis similar to the first prong of *Fike* and holding that aggravated assault is not a lesser included crime of attempted second-degree murder as apprehension by the victim is not an element of attempted murder). The trial court in this case did not err in refusing to give an instruction on aggravated assault as a lesser included crime of attempted murder.

## II. SUFFICIENCY OF EVIDENCE FOR ATTEMPTED FIRST-DEGREE MURDER

Saiz argues that there was insufficient evidence adduced at trial to support his convictions for attempted first-degree murder.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in a light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998). It is not the function of an appellate court to reweigh the evidence or pass on the credibility of witnesses. *Wisker v. Hart*, 244 Kan. 36, 37, 766 P.2d 168 (1988). A conviction of even the greatest offense may be sustained by circumstantial evidence. *State v. Smith*, 245 Kan. 381, 393, 781 P.2d 666 (1989).

Saiz argues that he should not have been convicted of attempted murder as the shots he fired from the shotgun could not have hit either Galvan or Delorea. Saiz argues that because Galvan and Delorea were behind the car and because the shots hit the car, there is no way that he could have harmed them. This argument is without merit.

Saiz went to Planeview with the intent to shoot someone. Saiz aimed the .20 gauge semi-automatic shotgun at Galvan and Delorea and fired at close range. Fortunately, Galvan and Delorea were able to get behind and under the car just prior to the shooting and were not hurt. Saiz successfully fired two shots in the direction

of Galvan and Delorea. Saiz bragged to the other passengers in the car that he "got them."

The evidence, when viewed in a light most favorable to the prosecution, could convince a rational factfinder to find Saiz guilty of two counts of attempted murder beyond a reasonable doubt.

## III. SUFFICIENCY OF EVIDENCE FOR FIRST-DEGREE MURDER

Saiz argues that there was insufficient evidence to support his conviction for the first-degree murder of Antonio. The standard of review on this issue is the same as described above in issue II.

The jury unanimously found Saiz guilty of first-degree murder on both the theory of premeditated murder and felony murder. Saiz argues that he should not have been convicted of first-degree murder, as his only intent was to go to Planeview to shoot at a house and that at no time was there any discussion about shooting people.

There was sufficient evidence to support the premeditated first-degree murder charge as testimony was elicited at trial in which Saiz went to the Galvan house with the intent to shoot someone. Saiz saw Galvan and Delorea by the car, aimed the shotgun at them, and fired several times. The third shot was not the result of a ricochet or a deflection and hit Antonio in the head, resulting in his death. A defendant is responsible for all of the usual consequences of his or her criminal actions.

There was also sufficient evidence to support the felony first-degree murder charge. Saiz admitted he intended to shoot at the Galvan house. Criminal discharge of a firearm at an occupied building, which is an inherently dangerous felony, is a felony which can support the felony-murder charge. The attempted murders of both Galvan and Delorea also sufficiently support the felony-murder charge.

The evidence, when viewed in a light most favorable to the prosecution, could convince a rational factfinder to find Saiz guilty of either premeditated or felony first-degree murder beyond a reasonable doubt.

## IV. HARD 40 ISSUES

During sentencing, the trial court considered both aggravating and mitigating factors pursuant to K.S.A. 21-4635, K.S.A. 21-4636, and K.S.A. 21-4637. The judge determined that there was one aggravating factor and one mitigating factor and thereafter sentenced Saiz to the hard 40, stating:

"I'll address first count one [first-degree murder]. As to count one, pursuant to the statutes of the state of Kansas, I do find that there are certain aggravated circumstances that exist as defined in the statute, primarily being the defendant knowingly and purposely created a risk of death to more than one person. As to mitigation, the only statutorily defined mitigating circumstance that exists is the age of defendant. There have been some points made of the age of all the defendants. In this case we're dealing with the acts of a child. Society does have some obligation to be concerned and care for our children. Society must also punish violent criminals, in this case a murderer. Society must also deal with this conflict, so must I.

"Now, it is clear to me from the evidence that has been presented, regardless of the arguments made and theories voiced, that based on the evidence Mr. Saiz went out that night to show himself a man, that he was one to be feared, that he was a man to be dealt with. He has been successful. He is a man to be dealt with. I am afraid of him. Society should be afraid of him, the effects that he may have on all of us. He did not consider himself a child at that time. He desired to be viewed and treated as a man. The evidence is clear to this Court that Mr. Saiz saw two individuals and he shot at them twice with the intent to kill. When that proved impossible, at the moment he saw another human target he brought his weapon to bear fully on that target and he shot to kill Tony Galvan. There's nothing reasonably offered other than youth to suggest that I ignore any of the acts or to suggest that I should not punish each of the acts that happened.

"It may be that Mr. Saiz's targets were the three people and never necessarily that house. Hitting the house was merely incidental to the effort or the desire to shoot three people. However, it did occur in the commission of another felony, the felony of attempted premeditated murder. I will find based on this that the mitigating factors do not overrule or counterbalance the aggravating factors in this case. I do find that the primary offense is count one, which calls for a forty-year sentence with no post-release supervision."

Saiz' argument concerning the imposition of a hard 40 sentence is two-fold: (1) He argues that there was insufficient evidence to support the finding of an aggravating circumstance, and (2) he argues that the finding of one aggravating circumstance (risk of death to more than one person) cannot "outweigh," "overrule," or

"counterbalance" the court's finding of one mitigating circumstance (age of defendant).

## A. SUFFICIENCY OF EVIDENCE TO SUPPORT IMPOSING A HARD 40 SENTENCE

Saiz argues that there was insufficient evidence to support the finding of an aggravating circumstance in this case.

Saiz argues that there was insufficient evidence to support the court's finding of the aggravating factor that he "purposely created a risk of death to more than one person." Saiz asserts that there is no way he could have hit either Galvan or Delorea as they were hiding behind and under the car. As we discussed earlier, there was sufficient evidence to support the convictions for the attempted murders of Galvan and Delorea. As such, the court correctly considered their risk of death in finding an aggravating circumstance. There was sufficient evidence, when viewed in a light most favorable to the State, by which a rational factfinder could have found by a preponderance of the evidence, the existence of the aggravating circumstance.

## B. ONE AGGRAVATING FACTOR COULD OUTWEIGH ONE MITIGATING FACTOR

The trial court's weighing of the aggravating and mitigating circumstances is within its sound discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. Spain*, 269 Kan. 54, Syl. ¶ 1, 4 P.3d 621 (2000). Discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

Saiz asserts that the court only found one aggravating circumstance and that the hard 40 sentence should not have been imposed because no aggravating circumstance outweighed the mitigating circumstance. K.S.A. 21-4635(c) reads in pertinent part:

"If the court finds that one or more of the aggravating circumstances enumerated in K.S.A. 21-4636 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating

circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638 and amendments thereto."

The weighing of the aggravating and mitigating circumstances is not a simple matter of counting the number of circumstances on each side. The court may consider the strength of the individual circumstances as well as the number of circumstances shown. A sole aggravating circumstance may be so strong that it outweighs several weaker mitigating circumstances. A single aggravating circumstance may support the imposition of a hard 40 sentence even when there is evidence to support a mitigating circumstance. See *Spain*, 269 Kan. at 55-60 (affirming hard 40 sentence where court considered only one aggravating circumstance and one mitigating circumstance); *State v. Dias*, 263 Kan. 331, 338, 949 P.2d 1093 (1997) (affirming hard 40 sentence where there was only one aggravating circumstance and one mitigating circumstance as the heinous, atrocious, and cruel nature of the crime outweighed the fact that the defendant had no prior significant criminal history); *State v. Follin*, 263 Kan. 28, 48, 947 P.2d 8 (1997) (noting that the weighing of aggravating and mitigating circumstances is not a "simple numerical process" and affirming hard 40 sentence where the jury found two aggravating circumstances and two mitigating circumstances); *State v. Phillips*, 252 Kan. 937, 942-43, 850 P.2d 877 (1993) (noting that one aggravating circumstance "can be so compelling as to outweigh several mitigating factors" and affirming hard 40 sentence where there was only one aggravating circumstance and six mitigating circumstances); *State v. Bailey*, 251 Kan. 156, 178, 834 P.2d 342 (1992) (holding that the two or three mitigating circumstances in the case were "so weak" that the hard 40 sentence could have been affirmed even if there would have been only one aggravating circumstance); and PIK Crim. 3d 56.01-E (jury instruction used when the jury was to consider the hard 40 sentence informing jury to "keep in mind that your decision should not be determined solely by the number of aggravating or any mitigating circumstances that are shown to exist").

The trial court in the present case considered the one mitigating circumstance to be weak, as the court found that Saiz considered

himself a man and committed the crimes in order to prove that he was a man. The fact that Saiz placed several lives in danger by shooting a shotgun during a drive-by shooting outweighs the mitigating factor of his age. We find no abuse in discretion where the trial court found that the "weak" mitigating circumstance did not outweigh the aggravating circumstance.

Affirmed.