IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,815

RONELL WILLIAMS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

Under *Miller v. Alabama*, 567 U.S. 460, 470, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), mandatory life without parole for a juvenile offender violates the Eighth Amendment's prohibition of cruel and unusual punishment. But a sentencing scheme that gives the sentencing authority discretion to impose a lesser punishment is constitutional under *Miller*.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 947, 476 P.3d 805 (2020). Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed December 17, 2021. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Joseph A. Desch,* of Law Office of Joseph A. Desch*,* of Topeka, argued the cause, and was on the brief for appellant.

*Daniel G. Obermeier*, assistant district attorney, argued the cause, and *Mark A. Dupree Sr.,* district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: In 2000, a jury convicted Ronell Williams of two counts of premeditated murder, one count of aggravated robbery, and one count of aggravated burglary for acts he committed when he was 14 years old. For the murder convictions, the district court sentenced Williams to two concurrent life sentences without the possibility of parole for 50 years (hard 50). Many years after his sentencing, Williams filed an action under K.S.A. 60-1507, arguing that the scheme under which he was sentenced violated the Eighth Amendment's prohibition against cruel and unusual punishment. The district court dismissed the motion as untimely and successive. The Court of Appeals reversed and remanded the case for a new hearing on whether Williams' youth and attendant characteristics made the hard 50 disproportionate punishment under the Eighth Amendment. The State petitioned for review.

FACTUAL AND PROCEDURAL HISTORY

At Williams' original criminal trial, the State put forth evidence to establish that Williams killed two people when he was 14 years old. The evidence showed that, on August 3, 1999, Williams and his twin brother Donell encountered Wilbur and Wilma Williams (no relation to the appellant) outside their house and forced the couple inside. The brothers searched the house, allegedly looking for things to steal. After finding the couple's car keys, Donell went outside to get the car and Ronell shot and killed both Wilbur and Wilma before the brothers left the scene. *State v. Williams*, 277 Kan. 338, 341, 85 P.3d 697 (2004). The State prosecuted Williams as an adult, and a jury convicted him of two counts of premeditated first-degree murder, one count of aggravated robbery, and one count of aggravated burglary. 277 Kan. at 338.

2

After considering aggravating and mitigating factors, the district court sentenced Williams to two hard 50 life terms for the murders, 59 months' imprisonment for the robbery, and 32 months' imprisonment for the burglary, all to run concurrent. *Williams*, 277 Kan. at 339. This court affirmed the convictions. 277 Kan. at 358.

Williams filed a motion in 2005 under K.S.A. 60-1507 alleging ineffective assistance of counsel. The district court denied relief, and the Court of Appeals affirmed. *Williams v. State*, No. 99,516, 2009 WL 1140260 (Kan. App. 2009) (unpublished opinion).

On September 30, 2016, Williams filed a second motion under K.S.A. 60-1507. He argued his hard 50 life sentences were cruel and unusual punishment. He relied on *Miller v. Alabama*, 567 U.S. 460, 470, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which held that mandatory life without parole for juvenile offenders is cruel and unusual punishment, and *Montgomery v. Louisiana*, 577 U.S. 190, 210-12, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), which announced that *Miller* was a retroactive change in the law. The district court dismissed the motion as successive and untimely.

Williams appealed, and the Court of Appeals reversed the district court's decision. *Williams v. State*, 58 Kan. App. 2d 947, 985, 476 P.3d 805 (2020). It concluded his motion was subject to an exception to the prohibition on successive motions because it was based on a change in law, and that "rare and extraordinary circumstances" required an extension of the one-year time limit to prevent manifest injustice. *Williams*, 58 Kan. App. 2d at 954.

The Court of Appeals further held that under the sentencing rules announced in *Miller*, a hard 50 sentence for a juvenile offender is unconstitutional unless the sentencer

3

first considers the offender's youth and the characteristics of youth before imposing the sentence. The panel ruled that the sentencing court failed to adequately take these factors into consideration. Consequently, it held Williams' sentence was unconstitutional under the Eighth Amendment.

We granted the State's petition for review.

ANALYSIS

The State argues that the panel has impermissibly extended *Miller* and that the Supreme Court's position in *Jones v. Mississippi*, 593 U.S.__, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021), confirms this. Alternatively, the State argues, the sentencing court properly considered Williams' youth and the characteristics of youth, so the sentencing process satisfied the *Miller* requirements. We agree with the State that *Jones* requires us to reverse the Court of Appeals.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. This clause "guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560-61, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). A punishment that is disproportionate to the offense is excessive and thus cruel and unusual under the Eighth amendment. 543 U.S. at 560-61.

The United States Supreme Court has held that certain sentencing practices will always be disproportionate to the offense because of "mismatches between the culpability of a class of offenders and the severity of a penalty." *Miller*, 567 U.S. at 470. It has

4

imposed categorical bans on these sentencing practices. See, e.g., *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008) (death penalty for individuals who commit nonhomicide crimes violates Eighth Amendment); *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) (death penalty for mentally disabled offenders violates Eighth Amendment). In 2005, the Court began a string of cases—*Roper*, *Graham*, *Miller*, *Montgomery*, and *Jones*—that barred certain sentencing practices for juveniles.

In *Roper*, the Court held that the death penalty is disproportionate punishment for juvenile offenders. The Court explained that society reserves the death penalty for "those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.'" *Roper,* 543 U.S. at 568 (quoting *Atkins v. Virginia*, 536 U.S. 304, 319, 122 S. Ct. 2242, 153 L. Ed. 2d 335 [2002]). It concluded juveniles are not in this class because they have a less developed character, are immature and irresponsible, are vulnerable to peer pressure and negative influence, have a high capacity for reform, and are unlikely to be "irretrievably depraved." 543 U.S. at 569-70. After recognizing "the diminished culpability of juveniles," the Court concluded that "the penological justifications [of retribution and deterrence] for the death penalty apply to them with lesser force than to adults." 543 U.S. at 571.

In *Graham*, the Court relied on the *Roper* reasoning to hold that life without parole is also a disproportionate sentence for juvenile offenders who commit nonhomicide crimes. *Graham v. Florida*, 560 U.S. 48, 81-82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). And, in *Miller*, the Court recognized that life without parole would be disproportionate for most juvenile offenders regardless of the nature of their crimes—homicide or nonhomicide. Consequently, it held that "*mandatory* life without parole for

5

juveniles violates the Eighth Amendment." (Emphasis added.) *Miller*, 567 U.S. at 487. The Court explained it would require any sentencer "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" before imposing life without parole. 567 U.S. at 480. In *Montgomery*, the Court held that *Miller* has retroactive effect. 577 U.S. at 208.

In this case, the Court of Appeals ruled that *Miller* requires sentencing courts to consider youth and its attendant characteristics before imposing life without parole or the functional equivalent of life without parole. 58 Kan. App. 2d at 970. It concluded the hard 50 is the functional equivalent of life without parole. 58 Kan. App. 2d at 972-73. Thus, it ruled, the district court should have considered youth and its attendant characteristics in this case and, if it did not, Williams' sentencing procedure ran afoul of *Miller*. 58 Kan. App. 2d at 983-84. The panel ultimately concluded the district court failed to comply with the *Miller* requirements. 58 Kan. App. 2d at 984.

After the Court of Appeals ruled, the Supreme Court decided *Jones*. In *Jones*, the Court held that *Miller* does not require a sentencing court to explain on the record how it considered youth and its attendant characteristics or make an explicit finding of permanent incorrigibility before imposing life without parole on a juvenile offender. In so ruling, the Court explained that "[u]nder *Miller* [], an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole . . . *if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment*." (Emphasis added.) *Jones*, 141 S. Ct. at 1311. The Court reasoned that an on-the-record-discussion "is not necessary to ensure that a sentencer considers a defendant's youth," because "if a sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth." 141 S. Ct. at 1319. We conclude the Court of Appeals interpretation of *Miller* cannot survive *Jones*.

6

When Williams committed his crimes, the base sentence for premeditated first-degree murder was life without the possibility of parole for 25 years (hard 25). K.S.A. 1999 Supp. 21-4706(c); K.S.A. 1999 Supp. 22-3717(b)(1). K.S.A. 1999 Supp. 21-4635 required the district court to consider whether that sentence should be elevated to the hard 50. Relevant here, this statute provided:

"if a defendant . . . is convicted of murder in the first degree based upon the finding of premeditated murder, the court shall determine whether the defendant shall be required to serve . . . a mandatory term of imprisonment of 50 years or sentenced as otherwise provided by law.

"(b) In order to make such determination, the court may be presented evidence concerning any matter that the court deems relevant to the question of sentence and shall include matters relating to any of the aggravating circumstances enumerated in K.S.A. 21-4636 and amendments thereto and any mitigating circumstances. . . .

"(c) If the court finds that one or more of the aggravating circumstances enumerated in K.S.A. 21-4636 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638 . . . ."

K.S.A. 1999 Supp. 21-4638 provided:

"When it is provided by law that a person shall be sentenced pursuant to this section, such person shall be sentenced to imprisonment for life and shall not be eligible for probation or suspension, modification or reduction in sentence. . . . [A] person sentenced pursuant to this section shall not be eligible for parole prior to serving 50 years' imprisonment, and such 50 years' imprisonment shall not be reduced by the application of good time credits."

7

K.S.A. 1999 Supp. 21-4637 enumerated a non-exclusive list of mitigating factors. It provided:

"Mitigating circumstances shall include, but are not limited to, the following:

"(a) The defendant has no significant history of prior criminal activity.

"(b) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

"(c) The victim was a participant in or consented to the defendant's conduct.

"(d) The defendant was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

"(e) The defendant acted under extreme distress or under the substantial domination of another person.

"(f) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

"(g) The age of the defendant at the time of the crime.

"(h) At the time of the crime, the defendant was suffering from posttraumatic stress syndrome caused by violence or abuse by the victim."

Under this scheme, the sentencing court was directed to consider aggravating and mitigating evidence, including the defendant's age at the time of the crime, to decide whether the hard 50 was the appropriate sanction. If the court found that the mitigating factors outweighed the aggravating factors, it was permitted to impose a hard 25. As the State argues, this is not a mandatory sentencing scheme as contemplated by *Jones* because the court had discretion to impose a lesser sentence than the hard 50. See *Jones*, 141 S. Ct. at 1322 (sentencing scheme at issue was constitutional "because the sentence was not mandatory and the trial judge had discretion to impose a lesser punishment in light of Jones's youth"). Consequently, under the Supreme Court's most recent precedent, Williams' discretionary sentencing procedure satisfied *Miller*. See *People v. Dorsey*, No.

8

123010, 2021 WL 3204034, at *8 (Ill. 2021) (*Miller*'s applicability to discretionary sentences is questionable after *Jones*); see also *Davis v. McCollum*, 798 F.3d 1317, 1320-22 (10th Cir. 2015) ("while *Miller* certainly reiterated the relevance of youth at sentencing as a general matter," it did not "alter the law governing statutory schemes giving the sentencing authority a choice between imposing life with or without possibility of parole on juvenile offenders"); *Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014) (life without parole sentence could not run afoul of *Miller*, even if court did not consider juvenile offender's age, because sentence was not mandatory); *Bell v. Uribe*, 748 F.3d 857, 869 (9th Cir. 2014) (individualized sentencing before life without parole is the only thing required under *Miller*); *Evans-Garcia v. United States*, 744 F.3d 235, 241 (1st Cir. 2014) (even if sentencing court failed to consider differences in juvenile offenders "as the Supreme Court required in *Miller*," this "procedural shortfall did not violate the bar on mandatory life sentences for juveniles" because life without parole was not mandatory).

Consistent with the Court's ruling in *Jones*, we must assume that the sentencing court here used its discretion to consider Williams' youth and its attendant characteristics before it imposed the hard 50. In coming to its holding, the Supreme Court rejected Jones' position that "meaningful daylight exists between (i) a sentencer's discretion to consider youth, and (ii) the sentencer's actual consideration of youth." *Jones*, 141 S. Ct. at 1319. It explained that a sentencer with "discretion to consider the defendant's youth . . . necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth." 141 S. Ct. at 1319. The Court noted that different sentencers may weigh youth differently, and then expressly sanctioned this result: "Some sentencers may decide that a defendant's youth supports a sentence less than life without parole. Other sentencers presented with the same facts might decide that life without parole remains appropriate despite the defendant's youth." 141 S. Ct. at 1319. But, the Court ruled, "the key point remains that, in a case involving a murderer under 18,

9

a sentencer cannot avoid considering the defendant's youth if the sentencer has discretion to consider that mitigating factor." 141 S. Ct. at 1319-20.

The Court recognized that a defendant might have an Eighth Amendment claim "if a sentencer considering life without parole for a murderer who was under 18 expressly refuses as a matter of law to consider the defendant's youth." *Jones*, 141 S. Ct. at 1320 n.7. But we do not face that situation here. Not only did Williams argue youth as a mitigating factor, but the district court also expressly acknowledged it as a mitigating factor on the record. Thus, even if we had reservations about making assumptions regarding the district court's considerations, the sentencing scheme's explicit direction to consider youth as a mitigating sentence and the court's consideration of that factor resolves any hesitation.

Williams insists that *Jones* stands for only two things: that a court need not lay out its sentencing considerations on the record and that a court need not make a finding of permanent incorrigibility before imposing a sentence. Williams argues we can take nothing more from *Jones*. In light of the explicit language in *Jones*, we disagree. In no uncertain terms, the Court instructs that its "precedents require a discretionary sentencing procedure" and that a sentencing complies with that precedent when "the sentence [is] not mandatory and the trial judge [has] discretion to impose a lesser punishment in light of [] youth." 141 S. Ct. at 1322.

While the Court of Appeals pre-*Jones* opinion is thorough and lengthy, *Jones* makes quick work of our review. Because the district court had discretion to impose a lesser sentence, we need not consider the panel's multiple holdings. Even if we were to assume that *Miller* applies to the functional equivalent of life without parole and that the hard 50 is such an equivalent, Williams' sentencing satisfied *Miller*.

10

In practical terms, this means that the 60-1507 court was correct to dismiss Williams' 60-1507 motion as untimely. Because his sentencing scheme satisfied *Miller*'s constitutional requirements, it was unnecessary to consider Williams' motion to prevent manifest injustice. The Court of Appeals is reversed and the district court's decision denying the motion is affirmed.

STANDRIDGE, J., not participating.

MICHAEL B. BUSER, J., assigned.[1]

––––––––––––––––––––––––––––––

[1]**REPORTER'S NOTE:** Judge Buser, of the Kansas Court of Appeals, was appointed to hear case No. 121,815 vice Justice Standridge under the authority vested in the Supreme Court by K.S.A. 2020 Supp. 20-3002(c).