NOT DESIGNATED FOR PUBLICATION

No. 123,612

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ISAAC D. SAIZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SEAN M.A. HATFIELD, judge. Opinion filed May 6, 2022. Affirmed.

*Richard Ney*, of Ney & Adams, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Isaac D. Saiz challenges the denial of his habeas corpus motion under K.S.A. 60-1507, asserting his sentences for first-degree murder and various other crimes, which he committed at 16 years old, violate the Eighth Amendment under *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). We stayed his appeal pending the Kansas Supreme Court's decision in *Williams v. State*, 314 Kan. 466, 500 P.3d 1182 (2021), *petition for cert. filed* March 16, 2022. Following publication of that decision, we requested and received additional briefing from the parties regarding *Williams*' impact on Saiz' sentence.

1

After careful review we find, under the criteria set out in *Miller*, *Williams*, and related cases, that Saiz' sentence does not violate the Eighth Amendment. In sentencing him, the district court did not impose a mandatory sentence. And Saiz has not shown that the sentencing court failed to consider his youth and attendant circumstances when sentencing him. Thus, his habeas corpus challenge must fail, and the district court was correct in denying his motion.

FACTS

The underlying facts of Saiz' convictions are set forth in his direct appeal. *State v. Saiz*, 269 Kan. 657, 658-60, 7 P.3d 1214 (2000). Briefly, in 1998, at 16 years old, Saiz killed a child while shooting at two teenagers during a gang-related, drive-by shooting. He was prosecuted as an adult and found guilty of premeditated first-degree murder, two counts of attempted murder, and criminal discharge of a firearm at an occupied building. When Saiz committed his crimes, premeditated first-degree murder carried a minimum sentence of life imprisonment without the possibility of parole for 25 years—a hard-25 sentence. K.S.A. 21-3401(a) (Furse); K.S.A. 1998 Supp. 22-3717(b)(1). However, if the court determined that aggravating circumstances existed that outweighed any mitigating circumstances, it could impose a hard-40 sentence—life imprisonment without the possibility of parole for 40 years. K.S.A. 21-4633 (Furse); K.S.A. 21-4635(a)-(c) (Furse).

At sentencing, the district court found the aggravating factor that Saiz knowingly or intentionally created a risk of death to multiple people outweighed the mitigating factor of his age. The court imposed a hard-40 sentence for first-degree murder. And for the remaining convictions, the district court sentenced Saiz to a consecutive 437-month prison term—194 months for each attempted murder conviction and 49 months for criminal discharge of a firearm at an occupied building, meaning his aggregated controlling sentence is 917 months. The Kansas Supreme Court affirmed his convictions and sentences on direct appeal. *Saiz*, 269 Kan. at 666-70.

Prior to his current K.S.A. 60-1507 motion before us, Saiz had filed two other habeas corpus motions challenging, among other claims, his sentences. In 2001, he filed a federal habeas corpus action, which was ultimately denied. *Saiz v. McKune*, No. 01-3185-RDR, 2004 WL 291167 (D. Kan. 2004) (unpublished opinion). In 2009, Saiz filed a habeas corpus motion under K.S.A. 60-1507 challenging the assistance of his trial defense attorney and direct appeal counsel. The district court denied the motion as untimely, and a panel of our court affirmed. *Saiz v. State*, No. 103,141, 2011 WL 767969 (Kan. App. 2011) (unpublished opinion).

In the years since Saiz' convictions, the United States Supreme Court has expanded its Eighth Amendment cruel and unusual punishment jurisprudence as applied to minors. Pertinent cases include *Graham v. Florida*, 560 U.S. 48, 74-75, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (Eighth Amendment prohibits life without possibility of parole for juveniles who commit nonhomicide crimes); and *Roper v. Simmons*, 543 U.S. 551, 573-74, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (capital punishment is cruel and unusual punishment for offenses committed by a minor). Of key significance to Saiz' case, in *Miller v. Alabama*, 567 U.S. 460, the Court held that mandatory life-without-parole (LWOP) sentences as applied to minors convicted of homicide are unconstitutional. Although the Court did not foreclose a life-without-parole sentence, it noted a sentencing court must first consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." 567 U.S. at 480. And in *Montgomery v. Louisiana*, 577 U.S. 190, 200, 208-09, 212, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), the Court clarified *Miller* announced a substantive rule—life without parole is disproportionate if the minor's crime "reflect[s] the transient immaturity of youth"—that applies retroactively in state habeas corpus proceedings.

Saiz filed a habeas corpus motion under K.S.A. 60-1507 in February 2020. Citing *Miller*, which prohibits mandatory LWOP sentences for juveniles convicted of homicide, he argued his aggregated sentences constitutes cruel and unusual punishment under the

Eighth Amendment because his 917-month sentence amounts to a de facto LWOP sentence. He also cited *Montgomery v. Louisiana*, which held *Miller* applies retroactively, to excuse his untimely and successive motion. In light of *Montgomery,* the State agreed that the district court could address the motion's merits. The district court heard arguments in October 2020 and took the matter under advisement.

Shortly after the district court took the matter under advisement, a panel of our Court of Appeals published *Williams v. State*, 58 Kan. App. 2d 947, 476 P.3d 805 (2020), *rev. granted* 312 Kan. 902 (2021). The *Williams* panel found *Miller* applies to discretionary sentences, a hard-50 sentence is the functional equivalent of life without parole, and the district court failed to adequately consider the defendant's youth and attendant circumstances at sentencing. 58 Kan. App. 2d. at 963, 970-73, 975-76. In the present case the district court allowed the parties to submit additional briefing for consideration.

Following the additional briefing on the impact of *Williams*, the district court denied Saiz' habeas corpus motion. The court agreed the motion was properly before it but found the sentence did not implicate *Miller*; the sentence was neither a mandatory life sentence nor did it preclude parole. And if *Miller* did apply, the sentencing court held it had adequately considered Saiz' age before sentencing him.

Saiz has timely appealed from the district court's denial of his K.S.A. 60-1507 motion.

ANALYSIS

After the parties filed their original briefs, but before we heard oral argument in November 2021 in this case, two new and clearly pertinent events commanded our attention. First, the United States Supreme Court issued its decision in *Jones v.*

4

*Mississippi*, 593 U.S. ___, 141 S. Ct. 1307, 1318-20, 209 L. Ed. 2d 390 (2021), which significantly narrowed the scope of appellate review in juvenile LWOP sentences. The timing of the *Jones* decision enabled the parties to discuss its potential application to Saiz' case at oral argument before us.

Second, however, we learned that the Kansas Supreme Court had granted a petition for review from the Court of Appeals decision in *Williams*. Since it became apparent that the Supreme Court's decision in that case might well determine the outcome of Saiz' contentions in his case, we stayed a decision on Saiz' appeal pending the Kansas Supreme Court's decision. The *Williams* decision was handed down on December 17, 2021. *Williams*, 314 Kan. 466. We will discuss the impact of the decision in our analysis that follows below.

After *Williams* was issued, at our request Saiz and the State submitted supplemental briefs discussing *Williams*' impact on the present case. We have now carefully reviewed the original and supplemental briefs of the parties and the recent cases bearing on Saiz' contentions about his sentences. For the reasons we set forth below, we have determined that the district court's denial of his habeas corpus motion must be affirmed.

On appeal, Saiz raises three issues. First, he argues the State is barred from arguing the Kansas sentencing scheme complies with *Miller* because it did not raise that issue below. Second, he contends that *Miller* may be interpreted to prohibit de facto LWOP sentences for juveniles because the Kansas Supreme Court in *Williams* did not expressly overrule a prior case. And third, Saiz believes the district court failed to comply with *Miller* when it used his age as an aggravating, rather than a mitigating, factor at his sentencing. But based on our reading of our Supreme Court's opinion in *Williams*, Saiz is not entitled to relief; the district court did consider his age before imposing a discretionary sentence, although certainly not in the manner Saiz desired.

Before addressing Saiz' contentions, we first briefly review the legal landscape in which his claims arise. In *Miller*, 567 U.S. at 470, 479-80, the United States Supreme Court held that the Eighth Amendment prohibits mandatory LWOP sentences for juveniles convicted of homicide. Because juveniles are fundamentally different from adults—they are less mature, more susceptible to negative influences, and have not firmly developed fixed character traits—the Court found that the traditional justifications for LWOP incarceration for them are less compelling. 567 U.S. at 471-73. Thus, sentencing schemes that *mandate* life without parole ignore these differences. 567 U.S. at 473-74. Though courts may impose LWOP sentences, they must first follow a certain process—considering a juvenile's youth—before doing so. 567 U.S. at 479-80, 483.

Four years after *Miller*, in *Montgomery*, 577 U.S. at 208-10, 212, the United States Supreme Court explained that *Miller* announced a substantive rule—that life without parole is appropriate only when the juvenile's crime reflects "permanent incorrigibility" rather than merely "the transient immaturity of youth"—and applies retroactively in state habeas proceedings. And most recently in *Jones v. Mississippi*, the Supreme Court clarified that a court need not make a separate factual finding of permanent incorrigibility or explain the basis for imposing life without parole. Such a requirement is unnecessary because a court will necessarily consider a juvenile's youth when exercising its discretion at sentencing. 141 S. Ct. at 1318-19.

In *Williams*, our Supreme Court held that a discretionary sentence does not violate *Miller*. Relying on *Jones*, the court found *Miller* only bars mandatory LWOP sentences. *Williams*, 314 Kan. at 470-72. When Williams was sentenced, Kansas law permitted a district court to impose a hard-40 sentence, rather than the customary hard-25 sentence, but only after determining whether aggravating circumstances outweighed mitigating circumstances, such as the defendant's age. Because a hard-40 sentence required a court to exercise its discretion, that sentence was not mandatory. 314 Kan. at 470-72.

6

After the supplemental briefing we ordered was received from Saiz and the State, our Supreme Court handed down another important decision bearing on our issues. In *State v. Gulley*, 315 Kan. 86, 505 P.3d 354 (2022), the court once again discussed the nature of LWOP sentences for juveniles. In doing so, the court found a 679-month sentence—which included mandatory life imprisonment without the possibility of parole for 618 months and a consecutive 61-month prison term—was not the functional equivalent to life without parole. *Gulley*, 315 Kan. 86, Syl ¶ 3. *Miller* does not apply to life sentences imposed under Kansas law, because they offer the possibility of release during the defendant's lifetime. 315 Kan. 101-03. And despite the inevitability of Gulley's advanced age at the time of parole eligibility, our Supreme Court found that the possibility of release during Gulley's lifetime did exist. 315 Kan. at 103. The court also clarified *Williams*, noting a hard-50 sentence is not inherently the functional equivalent of life without parole. 315 Kan. at 102.

We now turn to Saiz' specific issues in his appeal.

*The State is entitled to argue that* Williams *applies to this case.*

In his briefing, Saiz first argues that because the State agreed the district court could address the merits of his habeas motion, the State cannot now assert *Miller* only prohibits mandatory life-without-parole sentences. But the State's concession did not concern Saiz' substantive arguments, only whether Saiz' motion could be heard despite its untimely and successive status. Before the district court the State did argue that *Miller* only applies to mandatory sentences.

Since there are no factual disputes in this case, the only question is the legal merit of Saiz' claims. In ruling on Saiz' habeas corpus motion the district court obviously did not have the benefit of the decisions of the United States Supreme Court in *Jones*, and of the Kansas Supreme Court in *Williams* and now *Gulley*. We are in as good a position to

7

know and apply the correct legal standards as the district court was. In fact, we are in a much better position to apply the rapid-fire series of pertinent United States and Kansas Supreme Court decisions. And we are bound by United States Supreme Court decisions construing the constitution and opinions by the Kansas Supreme Court. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017); *State v. Lawson*, 296 Kan. 1084, Syl. ¶ 1, 297 P.3d 1164 (2013). In short, we cannot accede to Saiz' request, because we are not at liberty to ignore controlling authority.

In this appeal, the State may argue how *Williams* applies.

*The district court did not violate* Miller *because it imposed a discretionary sentence.*

Second, Saiz notes *Williams* did not address whether a de facto LWOP sentence could violate *Miller*. But in *State v. Brown*, 300 Kan. 542, 564, 331 P.3d 781 (2014), the Kansas Supreme Court previously found that *Miller* did not apply to a hard-20 sentence; this provided Brown with a "'meaningful opportunity to obtain release.'" (Quoting *Graham v. Florida*, 560 U.S. 48, 75, 130 S. Ct. 2011, 176 L. Ed. 2d 825 [2010].) Because *Williams* did not overrule *Brown*, Saiz argues a de facto LWOP sentence may violate *Miller* despite a discretionary sentencing scheme.

In response, the State argues *Brown* is distinguishable because it involved a mandatory hard-20 sentence. We concur with the State's interpretation. Since Saiz' sentence was discretionary, it does not violate *Miller*.

To violate *Miller*, a sentence must be *both* mandatory and impose life without parole. *Williams* addresses mandatory sentences; *Gulley* and *Brown* discuss life without parole. *Gulley* held that both the mandatory 618-month prison term and the total 679-month term did not constitute life without parole. 315 Kan at 103. Compared to the 618 months' imprisonment in *Gulley*, Saiz' hard-40 certainly provides the possibility of

release during his lifetime. But his aggregate sentence—917 months—is a much closer question. With good-time credits, Saiz could serve a minimum of 371 months of the consecutive 437-month term. K.S.A. 21-4638 (Furse); K.S.A. 21-4706(a) (Furse). If served directly after his hard 40 murder sentence, his aggregate minimum sentence would be 851 months, or approximately 71 years. Saiz could be eligible for release at 87 years old. Based on *Gulley*, this likely provides a remote possibility of release during Saiz' lifetime.

But even if we would construe this to be a de facto LWOP sentence for Saiz, his sentence does not violate *Miller* because his sentencing judge was not required by law to impose the specific sentence it chose to give Saiz. The district court exercised its discretion in arriving at the 917-month aggregate sentence.

*Williams* provides a stronger foundation against Saiz' argument. *Williams* suggests a LWOP sentence, de facto or otherwise, does not violate *Miller* if the district court has discretion to impose the sentence after considering the juvenile's youth and attendant circumstances. See *Williams*, 314 Kan. at 472-73. That is, a *Miller* violation occurs when a sentence is both mandatory and constitutes life without parole.

To reiterate, Saiz' sentence was not mandatory. When Saiz committed his crimes, the minimum sentence for first-degree premeditated murder was a hard-25 sentence. K.S.A. 21-3401(a) (Furse); K.S.A. 1998 Supp. 22-3717(b)(1). But a court could impose a hard-40 sentence if it determined aggravating circumstances outweighed any mitigating circumstances. K.S.A. 21-4633 (Furse); K.S.A. 21-4635(a)-(c) (Furse). Likewise, when separate sentences were imposed on the same day, a court could impose them concurrently or consecutively. K.S.A. 21-4608(a) (Furse).

Saiz does not focus on any individual sentence; he argues his collective sentence violates *Miller*. But as in *Williams*, the district court possessed discretion to impose the

hard 40, rather than the mandatory hard 25, and to order the remaining convictions be served consecutively. Because the district court had discretion, Saiz' sentence does not violate *Miller*.

*The court considered Saiz' age before sentencing.*

Finally, Saiz contends that though *Williams* found a discretionary sentencing procedure that includes consideration of a defendant's youth and attendant circumstances satisfies *Miller*, *Williams* did not explain how thorough that consideration must be. Because he and his counsel presented the district court with so little information about those circumstances, he argues that the court could not have meaningfully considered his youth as a mitigating factor. But Saiz has not asserted what additional information the court should have considered, so we must presume the court properly considered his youth.

*Williams* notes that, under *Jones*, sentencing courts will presumably consider a defendant's youth and attendant circumstances. 314 Kan. at 472. Despite that presumption, our Supreme Court confirmed this occurred when Williams argued, and the court expressly acknowledged, his youth as a mitigating factor. 314 Kan. at 473. But *Williams* did not explain how much information a court must consider. *Miller* cited several categories of information relevant to assessing a juvenile's youth, such as the defendant's chronological age, family and home environment, possibility of rehabilitation, and the circumstances of the homicide. 567 U.S. at 477-78.

Saiz asserts the district court could not have meaningfully considered his youth and attendant circumstances because he presented no evidence on this topic at sentencing. His argument faces multiple hurdles. He seeks to gauge the thoroughness of the court's analysis. But as *Williams* notes, *Jones* presumes a court will consider youth, and need not

make specific findings of incorrigibility. That presumption suggests that during the life of the case, the court will collect sufficient information to make the proper consideration.

The record here convinces us that Saiz cannot circumvent that presumption. While Saiz did not discuss his youth at sentencing, the same judge also presided over the State's motion for adult prosecution and the trial. Based on the judge's involvement, as well as the extremely narrow scope of review allowed by *Jones*, we must presume the court obtained adequate information to meaningfully consider his youth.

But even without that presumption, Saiz had the burden of producing this evidence. See, e.g., *State v. Scott*, 286 Kan. 54, 99, 183 P.3d 801 (2008) (under what is now K.S.A. 2020 Supp. 21-6617[e], concerning death penalty in capital murder case, a defendant bears the burden of producing evidence of mitigating factors), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Saiz did not do so at sentencing. And he does not describe what additional evidence the court should have considered and how it would have influenced its sentencing decision. Without further explanation, Saiz cannot show the court's consideration was inadequate.

Finally, in his supplemental brief Saiz argues the district court improperly treated his age as an aggravating factor. At sentencing, the court explained:

> "Now, it is clear to me from the evidence that has been presented, regardless of the arguments made and theories voiced, that based on the evidence Mr. Saiz went out that night to show himself a man, that he was one to be feared, that he was a man to be dealt with. He has been successful. He is a man to be dealt with. I am afraid of him. Society should be afraid of him, the effects that he may have on all of us. He did not consider himself a child at that time. He desired to be viewed and treated as a man."

11

But this explanation does not indicate the court used Saiz' age against him. It explains why, after considering Saiz' age, the court did not find it outweighed any aggravating factors.

Saiz has not rebutted the presumption that the district court properly considered his youth and attendant circumstances. He has not shown what other information the court should have considered. And the sentencing transcript demonstrates the court did consider Saiz' age, though it did not reach the result Saiz sought.

Saiz' sentence does not violate *Miller*, and the district court adequately considered Saiz' youth and attendant circumstances before imposing the sentences upon him.

Affirmed.

* * *

ATCHESON, J., concurring: I concur in the result the majority reaches in denying the motion of Isaac D. Saiz for habeas corpus relief from consecutive sentences imposed on him for murder and other crimes committed in a single episode when he was 16 years old and that will keep him in prison at least until he is in his late 80s, assuming he lives that long. I do so principally based on the Kansas Supreme Court's recent decision in *State v. Gulley*, 315 Kan. 86, 505 P.3d 354 (2022).

In *Gulley*, the court held that a life sentence with the possibility of parole after serving 618 months (or about 51 years) did not amount to cruel and unusual punishment violating the Eighth Amendment to the United States Constitution when imposed on a defendant for a premeditated murder committed as a juvenile. The court reasoned the sentence allowed the actuarial possibility Gulley might be paroled. 315 Kan. at 102. Here, that's also true of the sentence Saiz received on the first-degree murder conviction;

he could be considered for parole after serving 40 years. But Saiz also received consecutive prison sentences aggregating 437 months (or about 36 years) on three other convictions for serious felonies. As the law now stands, Saiz must serve those sentences on top of the 40-year minimum for the murder conviction before he may seek conditional release.

In *Gulley*, the court also considered a consecutive sentence on another crime and found no constitutional violation because the total period of incarceration did not "ensure[] that Gulley will . . . live his entire life in prison." 315 Kan. at 103. Although Saiz most probably will die in prison, it is not a certainty. And that appears to be enough for the court to find the punishment constitutionally tolerable even if the wrongdoing—all of which happened within a minute or so—might have been partly attributable to the "'transient immaturity'" of youth rather than to the work of "'the rare juvenile offender whose crime reflects irreparable corruption.'" *Miller v. Alabama*, 567 U.S. 460, 479-80, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 573, 125 S. Ct. 1183, 161 L. Ed. 2d 1 [2005]).

In *Miller*, the Court held that a mandatory sentence of life in prison without parole for a juvenile offender violates the Eighth Amendment because the punishment permits no judicial differentiation between a defendant animated by the lack of insight, maturity, and reflection that tend to mark youth itself and a defendant likely acting with irredeemable incorrigibility. 567 U.S. at 479-80. The Court recognized that life without parole would be a constitutionally permissible punishment for murder if the sentencing judge were permitted to make that differentiation based on case specific circumstances. At the same time, the Court did not suggest those constitutional considerations were inapplicable to functionally equivalent sentences, such as a controlling term of years approaching or exceeding a juvenile's projected life.

But there has been a judicial retrenchment from the principles outlined in *Roper*, *Miller*, and *Montgomery v. Louisiana*, 577 U.S. 190, 206-09, 212, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), thus marking a return to giving predominant consideration to retribution and a concomitant move away from recognizing rehabilitation as a fundamental component of criminal punishments imposed on juveniles. See *Jones v. Mississippi*, 593 U.S. ___, 141 S. Ct. 1307, 1328, 1311, 209 L. Ed. 2d 390 (2021) (Sotomayor, J., dissenting); *Gulley*, 315 Kan. at 106-07 (Standridge, J., dissenting). Based in part on *Jones*, the majority in *Gulley* carries on that retreat. 315 Kan. at 103.

Saiz planned and carried out a drive-by shooting that left an eight-year-old child dead—an unintended victim of a despicable act. But as despicable the act, should our criminal justice system categorically consign its juvenile perpetrator to prison without some meaningful opportunity for release upon demonstrable maturation and rehabilitation after serving an appropriately retributive punishment? Apparently so. And consistent with *Gulley*, that's true here whether Saiz has, indeed, become a reasonably responsible adult or has shown himself to be irredeemably malevolent. The failure to draw that distinction is troubling when it comes to juveniles who commit factually horrific crimes.

We are, nonetheless, constrained to apply the rule in *Gulley*, and the rule requires we affirm the denial of any relief to Saiz on his K.S.A. 60-1507 motion. The majority so holds. I am obligated to agree. See *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015) (Court of Appeals required to follow Kansas Supreme Court precedent absent some indication Supreme Court is departing from its previous position). But I do not otherwise join in the majority opinion and would otherwise be inclined to say Saiz ought to receive a new sentencing hearing.